UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-24230-CIV-WILLIAMS/GOODMAN

**ERICK ESCUTIA**, individual
And on behalf of E.E., a minor

      Plaintiffs,

**v.**

**CARNIVAL CORPORATION;**
**LISANDRA S.A.—OPERATED BY**
**FURY DE MEXICO S.A. DE**
**C.V./FURY CATAMARANS COZUMEL;**
**FURY CATAMARANS, INC.; JOHN DOE;**
**CONNELLY SKIS, LLC, d/b/a AQUAGLIDE;**
**and XYZ CORPORATION(S)**

      Defendants.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON**
**DEFENDANTS' MOTIONS TO DISMISS**

      Erick Escutia (both individually and on behalf of E.E., a minor)[1] filed a Complaint

[ECF No. 1] against a cruise ship operator (Carnival Corporation ("Carnival")); an

excursion/tour company providing water-based attractions in Cozumel (Mexico Lisandra

S.A. ("Lisandra")); another entity (Fury Catamarans, Inc. ("Fury")) which supposedly

---

[1]      Although there are, in effect, two allegedly injured persons on Plaintiff's side of
the case, the Undersigned will refer to Plaintiff in the singular tense because Plaintiff uses
the singular tense in his Complaint and responses to each Defendant's motion to dismiss.
[ECF Nos. 1; 47; 53].

owns or controls Lisandra; a John Doe defendant who allegedly fell from an inflatable waterslide onto "Plaintiff" (a Carnival passenger) on November 15, 2021; the waterslide manufacturer (Connelly Skis, LLC d/b/a Aquaglide ("Connelly Skis" or "Aquaglide")) and other unknown entities referred to as XYZ Corporations (and who supposedly were included to "represent the owner(s) and/or operators" of the excursion at issue, in case the tour operator has a different name than the named Defendants).

Defendants Carnival and Connelly Skis filed separate motions to dismiss. [ECF Nos. 33; 36].[2] Plaintiff filed responses [ECF Nos. 53; 47] and these two Defendants filed replies [ECF Nos. 63; 55]. United States District Judge Kathleen M. Williams referred these two motions to me for a Report and Recommendations. [ECF Nos. 35; 37].

For the reasons outlined in greater detail below, the Undersigned **respectfully recommends** that the Court **grant** the two motions. For purposes of introductory summary, though, the Complaint is an impermissible "shotgun pleading" because it incorporates all allegations of all prior counts into each successive count and because it

---

[2]   Defendant Connelly Skis' motion includes a Local Rule 7.1(a)(3) certificate of pre-filing conference. But Connelly Skis was not *required* to have a conference, nor was it obligated to include a certificate of conferral. That's because a motion to dismiss is one of several expressly-noted **exceptions** to the rule. So, although Connelly Skis was not required to complete these two tasks, there is surely nothing *wrong* in having a conference anyway. Motions to dismiss (and other types of dispositive motions, such as those for summary judgment) are exempted from the conference requirement because, in part, the Court does not expect a conference to yield any meaningful results. Therefore, it is no surprise that Connelly Skis' conference here did not resolve any of the issues raised in the dismissal motion. Nevertheless, the Undersigned appreciates that Connelly Skis made the effort.

vaguely refers to "Plaintiff" (making it difficult to discern whether it was Escutia or E.E. who did certain things or had specific things happen to them). In addition, Escutia's individual claim is barred by the shortened (through a contractual provision) statute of limitations, which means a **with-prejudice** dismissal of that individual claim is warranted.

In addition, many of Plaintiff's critical allegations concerning negligence are fact-free, conclusory assertions -- and are therefore insufficient to state a viable claim.

The Complaint also does not contain adequate allegations concerning personal jurisdiction over Connelly Skis, so the Complaint should be dismissed (albeit without prejudice) against Connelly Skis. Other counts have myriad pleading deficiencies which Plaintiff may try to cure in an amended complaint. So the Undersigned **also recommends** that Judge Williams permit the filing of an *amended* complaint.

## I.   Factual Allegations in the Complaint

The Complaint alleges as follows:[3]

Carnival operates the vessel Carnival *Breeze*. Lisandra owned and/or operated an excursion called "Deluxe Beach Sail, Snorkel & Beach Party" (the "Excursion"). Carnival offered, recommended, marketed and otherwise sold the Excursion. Plaintiff believes that Lisandra agreed to indemnify Carnival for the Excursion-related claims here. He also

---

[3]   On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

alleges that Carnival and Lisandra are joint venturers and that Lisandra is an agent or apparent agent of Carnival.

Connelly Skis, d/b/a Aquaglide, manufactured an inflatable slide used by the Excursion.

Carnival offered *Breeze* passengers the opportunity to go on excursions during the cruise, including the Excursion at issue in this lawsuit. Carnival had a shore excursion desk aboard the *Breeze*. Carnival employees wearing Carnival uniforms staffed the desk and made excursion recommendations to passengers. Carnival sold tickets for the Excursion to passengers, including Plaintiff and E.E., and the cost was added to the passengers' ship invoices. Carnival did not provide Plaintiff any information about the name, contact information or ownership of the Excursion. At no time did Carnival represent to Plaintiff or the other passengers that the parties operating the Excursion were not agents or employees of Carnival.

Carnival's name and logo were on the sign directing passengers to the Excursion on Carnival's pier. The webpage advertising refers to the Excursion as a "Carnival cruise shore excursion."

Carnival recommended its passengers to not engage in excursions, tours or activities which were not sold through Carnival.

Carnival paid the entities operating the Excursion a portion of the ticket sales after the Excursion was sold. Carnival shared profits and losses with the entities managing and

operating the Excursion.

On November 15, 2021, Plaintiff and his "family" (the Complaint does not say how many were in this group) bought tickets for the Excursion. [The Complaint does not say whether Plaintiff is E.E.'s father -- or uncle or brother or some other type of relative or guardian -- and it does not specify how or why he is able to bring this claim on E.E.'s behalf.].

Plaintiff and his family were picked up by a catamaran at the pier where the *Breeze* was docked. They were taken to a "snorkeling" area and then they were taken to a private beach. Unlimited alcoholic (and non-alcoholic) beverages were provided on the catamaran after both the snorkeling activity and at the beach.

The private beach had a large water park filled with inflatable structures designed and sold by Aquaglide, including climbing structures, trampolines, and slides. The water in the water park was no more than waist deep to most adults -- about two to five feet deep. After several hours at the private beach, the participating passengers were taken back to the pier.

Carnival marketed the Excursion as being for passengers of all ages, including those unvaccinated for COVID-19.

On November 15, 2001, "Plaintiff" was instructed to move up the ladder to reach the top of an inflatable slide (which Plaintiff believes was the Aquaglide Summit Express). As "Plaintiff" climbed down the ladder, an adult passenger at the top "abruptly fell" onto

"Plaintiff," causing "Plaintiff" to suffer severe and personal injuries.[4]

Plaintiff filed an eight-count Complaint. Count I is against Carnival, for negligence. Count II is against the so-called "Excursion Entities" (Lisandra, Fury, and XYZ Corporations), for negligence. Count III is against Carnival, for apparent agency or agency by estoppel. Count IV is against Carnival and the Excursion Entities for being joint venturers. Count V is against Carnival and the Excursion Entities under a third-party beneficiary theory. Count VI is based on the theory that the Summit Express is "unreasonably dangerous," but it appears to be against "Aquaglide," which is not a named defendant (but, rather, appears to be a trade name). So it seems as though Count VI is likely *intended* to be against Connelly Skis, but Connelly Skis is never expressly mentioned in any of the counts in Count VI. Count VII is against John Doe, for negligence. Count VIII is against "all Defendants," for negligent infliction of emotional distress.

## II.   Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[4]     The style of the Complaint lists one Plaintiff only: Erick Escutia. But paragraph 28 of the Complaint refers to "Plaintiff" as the one who the John Doe Defendant fell on (and the one who was injured). So this portion of the Complaint makes it seem as though Erick is the one who was physically injured by the man who fell from the slide -- but other parts of the Complaint, as well as in later, Plaintiff-filed memoranda, make it seem as though the *minor*, E.E., is the one who was injured when John Doe fell on him from above. And if E.E. was *not* the one injured by the falling passenger, why would Erick Escutia be filing a lawsuit on E.E.'s behalf? This question, and others, arises because the Complaint alleges that Plaintiff (not E.E.) is the one injured by the falling passenger.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

This lawsuit is substantively controlled by United States general maritime law. Incidents occurring on the navigable waters and/or bearing a significant relationship to traditional maritime activities are governed by general maritime law. *See e.g., Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959*); Kornberg v. Carnival Cruise Lines, Inc.*, 741F.2d 1332, 1334 (11th Cir. 1984). Moreover, it is well settled that the law governing passenger suits against cruise lines is the general maritime law. *See, e.g.,* Schoenbaum, Thomas J., *Admiralty and Maritime Law* §§ 3–5 (4th Ed. 2004); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989). Here, according to the Complaint's allegations, Plaintiff sustained injuries while participating in a shore excursion during his

cruise on the *Breeze*. [ECF No. 1, ¶¶ 17, 23].

**III.**     <u>**Analysis**</u>

<u>**Carnival's Motion to Dismiss**</u>

<u>Shotgun Pleading</u>

The Eleventh Circuit has stated that the purpose of Federal Rules of Civil Procedure 8 and 10 is to "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). Complaints that violate Rule 8 or Rule 10 are termed "shotgun pleadings," and the Eleventh Circuit has consistently condemned such pleadings for more than three decades. *See Davis v. Coca-Cola Bottling Co. v. Consol,* 516 F.3d 955, 979–80 & n.54 (11th Cir. 2008) (collecting cases) (abrogated on other grounds).

Shotgun pleadings must not be tolerated "because they are calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov*, 986 F.3d at 1324 (citation and some internal quotation marks omitted).

Furthermore, shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc an appellate court dockets, and undermine the public's respect for the courts." *Id*. (citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291

(11th Cir. 2018)).

A district court's inherent authority to control its docket includes the ability to dismiss a complaint on shotgun pleading grounds. *Vibe Micro, Inc.*, 878 F.3d at 1295 (citing *Weiland*, 792 F.3d at 1320). The Eleventh Circuit has also noted that district courts should require a plaintiff to replead a shotgun complaint even when the defendant does not seek such relief. *See Hirsch v. Ensurety Ventures, LLC*, No. 19-13527, 2020 WL 1289094 at *3 (11th Cir. Mar. 18, 2020).

The Eleventh Circuit has identified four different categories of shotgun pleadings:

> The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The second is a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third is a complaint that does not separate each cause of action or claim for relief into a different count. And the final type of shotgun pleading is a complaint that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Barmapov*, 986 F.3d at 1324–25 (quoting *Weiland*, 792 F.3d at 1321–22 (alteration in original; internal citations and quotation marks omitted)).

Plaintiff's Complaint is more problematic than the typical type of shotgun pleading identified in *Weiland*, as it incorporates **all** preceding and subsequent paragraphs into each count (rather than incorporating preceding counts). As a result of Plaintiff restating all paragraphs in each count, "most of the counts . . . contain irrelevant

factual allegations and legal conclusions." *Smith v. Boston Sci. Corp.*, No. 3:21-CV-815-MMH-JRK, 2021 WL 11132751, at *1 (M.D. Fla. Aug. 27, 2021) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). This is an even bigger issue when, as here, there are multiple Defendants. Plaintiff's Complaint realleges paragraphs addressed against specific Defendants into counts against other Defendants.

Accordingly, Plaintiff's Complaint is clearly an impermissible shotgun complaint because it is the first type of shotgun pleading. *Car Body Lab Inc. v. Lithia Motors, Inc.*, No. 21-CV-21484, 2021 WL 2658693, at *2 (S.D. Fla. June 22, 2021) *report and recommendation adopted*, No. 21-21484-CIV, 2021 WL 3403208 (S.D. Fla. Aug. 4, 2021) ("Because [the] Complaint does, in fact, roll all allegations into every successive count, it violates the first, and most-common, type of impermissible shotgun pleading."); *Ryder Truck Rental, Inc. v. Logistics Resource Sols., Inc.*, No. 21-21573-CIV, 2021 WL 9037642, at *2 (S.D. Fla. July 28, 2021) (same).

But the Complaint is also the second type of impermissible shotgun pleading: it is vague and asserts nebulous and sometimes-confusing allegations. Remember, there is only one Plaintiff, and it is Erick Escutia. But the Complaint mentions "Plaintiff" as the one who was injured when the John Doe passenger fell from above on the inflatable water slide attraction. Similar confusion occurs in other parts of the Complaint.

Judge Williams should **grant** Carnival's motion to dismiss **without prejudice** and

permit Plaintiff to file an Amended Complaint which does not run afoul of the rule prohibiting shotgun pleadings.[5]

The Individual Claims Against Carnival are Time-Barred

Paragraph 14a of the Ticket Contract,[6] in effect at the time of Plaintiff's voyage, required Plaintiff to bring any action for personal injury **within one year** from the date of the incident causing the alleged injury. Plaintiff's claims as an individual should be dismissed with prejudice because the alleged injury occurred on or about November 15, 2021, and Plaintiff did not file the Complaint until November 2, 2023.

In general, a three-year statute of limitations applies to a suit for a maritime tort resulting in personal injury or death. 46 U.S.C. § 30106.[7] However, a shipowner may impose by contract a shorter period for filing claims, giving notice of injury, or filing suit,

---

[5]    Connelly Skis' motion to dismiss [ECF No. 36] does not *expressly* invoke the "shotgun pleading" doctrine, but it asserts a concept encompassed by it -- vague allegations about critical points. For example, it flags [ECF No. 36, p. 10] the omission about the relationship between Erick Escutia and E.E. In fact, Connelly Skis points out that Federal Rules of Civil Procedure 17(c) allows a guardian, committee, conservator, or fiduciary to sue on behalf of a minor, Fed. R. Civ. P. 17(c), but it then highlights that this information is absent from the Complaint.

[6]    Carnival attached the ticket contract to its motion to dismiss. [ECF No. 33-1].

[7]    The statute is now known as 46 U.S.C. § 30526, which became effective December 23, 2022. Because Plaintiff's lawsuit is based on events occurring on November 15, 2021, the earlier version of the statute applies. *See United States v. Bello*, 503 F. App'x 910, 914 n.3 (11th Cir. 2013) (applying the version of the statute that was in effect at the time of the alleged conduct.). Both versions of the statute authorize a limit on when a personal injury civil lawsuit can be brought to no less than one year after the date of the injury or death.

so long as the period is no shorter than time limits set forth in 46 U.S.C. § 30508(b), which

provides as follows:

> (b) Minimum Time Limits. -- The owner, master, manager, or agent of a vessel transporting passengers or property between ports in the United States, or between a port in the United States and a port in a foreign country, may not limit by regulation, contract, or otherwise the period for--
>
> (1) giving notice of, or filing a claim for, personal injury or death to less than 6 months after the date of the injury or death; or
>
> (2) bringing a civil action for personal injury or death to less than **one year** after the date of the injury or death.

(emphasis supplied). Carnival's Ticket Contract one-year limitation period is valid and

enforceable provided that it is reasonably communicated to the passenger. *See, e.g., Farris

v. Celebrity Cruises, Inc.,* 487 F. App'x 542, 544 (11th Cir. 2012).

The reasonable communicativeness test involves a two-pronged analysis that

considers: (1) the physical characteristics of the clause in question; and (2) whether

Plaintiff had the ability to become meaningfully informed of the contract terms. *Myhra v.

Royal Caribbean Cruises, Ltd.,* 695 F.3d 1233, 1244 (11th Cir. 2012). The terms of a ticket

contract are presumptively enforceable absent a strong showing from Plaintiff that

enforcement of the terms would be unreasonable. *Carnival Cruise Lines v. Shute*, 499 U.S.

585, 590–91, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991).

Plaintiff need not actually have read the terms for them to have been reasonably

communicated. *See Myhra*, 695 F.3d at 1246 n.42 ("We note that whether the Myhras chose

to avail themselves of the notices and to read the terms and conditions is not relevant to

the reasonable communicativeness inquiry."); *see also Caron v. NCL (Bahamas) Ltd.*, 910

F.3d 1359, 1367 (11th Cir. 2018).

The Ticket Contract in this case includes at the top of the first page:

**IMPORTANT NOTICE TO GUESTS**

\*\*\*

**THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO SECTIONS 1, 4, AND 12 THROUGH 15, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINE, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS, INCLUDING FORUM SELECTION, CHOICE OF LAW, TIME LIMITATIONS FOR FILING SUIT, ARBITRATION, WAIVER OF JURY TRIAL FOR CERTAIN CLAIMS, AND CLASS ACTION WAIVER.**

[ECF 33-1, p. 1].[8]

In his response, Plaintiff does not argue that he never read the entire contract or that it is unfair or that he is not bound by the one-year limitations period. Instead, he merely says that E.E.'s claims are "protected by 46 U.S.C. § 30526(d), which 'tolls the period to give notice of a claim if the claimant is a minor or mental incompetent, or if the claim is for wrongful death, until the earlier of the date a legal representative is appointed or three years after the injury or death.'" In other words, he, in effect, concedes that his *individual* claim is time-barred. Carnival's dismissal motion does not assert the time-bar argument against Plaintiff's claim in his *representative* capacity (i.e., on behalf of E.E.).

---

[8]      This entire paragraph is in bold, all-capital-letters font. *See* [ECF 33-1, p. 1].

Courts in this District have held that claims that are not filed within the one-year statute of limitations contained within a passenger's cruise ticket contract are time-barred. *See Hayes v. Royal Caribbean Cruises, Ltd*., 2019 WL 1338574 at *3–4 (S.D. Fla. Mar. 22, 2019) (granting motion to dismiss with prejudice); *Schachter v. Cunard Line Ltd. Co.,* 2009 WL 10668975 at *2–3 (S.D. Fla. Dec. 30, 2009) (granting motion to dismiss with prejudice). In both cases, plaintiffs were fare-paying passengers subject to the passenger ticket contracts in effect for their respective voyages. *Id*. Both plaintiffs were aware of the statute of limitations and both failed to bring suit within the one-year statute of limitation. *Id*. Accordingly, the Court in each instance dismissed the complaint with prejudice. *Id*.

Plaintiff was a fare-paying passenger onboard Carnival's vessel and was subject to the terms of the passenger ticket contract. Plaintiff was aware of the statute of limitations and still failed to file his Complaint within that time. It is clear then from the face of the Complaint and the Ticket Contract that these allegations are untimely. Therefore, this Court should issue a **with-prejudice dismissal** of Plaintiff's individual claim (and the Undersigned **respectfully recommends** this result).

<u>Insufficient Negligence Allegations</u>

A cruise ship passenger filing a lawsuit against the cruise operator is,

the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both. It may be true that, in some cases, it will easier [sic] for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, a passenger will not be

able to identify any specific employee whose negligence caused her injury. In other cases, a passenger will seek to hold a shipowner liable for maintaining dangerous premises for failing to warn of dangerous conditions off-ship or for negligence related to the actions of other passengers.

*Yusko v. NCL (Bahamas, Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) (internal citations omitted).

In the instant case, Plaintiff did not bring a vicarious liability claim. Instead, he brought a **direct** liability claim, and asserted 22 different ways that Carnival supposedly is responsible under a direct liability approach. But a direct liability claim requires that the shipowner had actual or constructive notice of a risk-creating condition. *Id*. at 1167.

However, Plaintiff's notice allegations in Count I are generic, conclusory, and speculative, and are therefore insufficient to establish that Carnival was aware of a dangerous condition regarding the subject shore excursion and/or the tour operator prior to Plaintiff's incident. *See Navarro v. Carnival Corp.*, No. 19-cv-21072, 2020 WL 1307185, at *3 (S.D. Fla. Mar. 19, 2020) (dismissing cruise ship passenger's amended negligence complaint because "aside from the conclusory allegation that Carnival 'was or should have been aware' of the risk creating condition—there are no **factual** allegations supporting conclusion that Carnival knew of this risk creating condition[.]" (emphasis added)); *Twombl*y, 550 U.S. at 545.

Plaintiff's only notice allegation (that the condition had been there for a sufficient length of time) is not a factual allegation; rather, it is entirely conclusory. [ECF No. 1, ¶

44].[9] *See, e.g., Kendall v. Carnival Corp.*, No. 1:23-CV-22921-KMM, 2023 WL 8593669, at *1 (S.D. Fla. Dec. 8, 2023) (granting motion to dismiss -- albeit without prejudice and with leave to file an amended complaint -- because notice allegations were conclusory and therefore deficient). *See also Newbauer v. Carnival Corp.*, 26 F.4th 931, 936 (11th Cir. 2022) (affirming order dismissing complaint because the plaintiff's complaint contained only "conclusory allegations as to actual or constructive notice" and failed to allege any facts in support of the conclusory allegations).

Moreover, Plaintiff has essentially abandoned his arguments regarding notice as he fails to respond to any of Carnival's arguments in his Response. *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("when a party fails to respond to an argument or otherwise address a claim," the Court deems such argument or claim "abandoned") (citation omitted).

Indeed, trial courts in this Circuit regularly deem claims abandoned where a plaintiff raises a claim in a complaint but then fails to defend it in opposition to a motion to dismiss. *See, e.g., Fontainebleau Fla. Hotel, LLC v. S. Fla. Hotel & Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1246 (S.D. Fla. 2020); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp.

---

[9]     Paragraph 44 alleges that "Carnival knew of the foregoing conditions causing Plaintiff's accident did not warn [sic] Plaintiff, or correct them, or the conditions existed for a sufficient length of time so that Carnival, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them." [ECF No. 1, ¶ 44]. No specific **facts** are alleged, however.

2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citation omitted)).

Thus, Plaintiff's abandonment of this claim supports a **recommendation** that Count I be **dismissed**.

But, in addition to that rationale for the dismissal of Count I, Plaintiff's Response [ECF No. 53] to Carnival's dismissal motion contains many purported "facts" which are **not alleged in the Complaint**. For example, the Response asserts for the first time that: (1) Carnival cancelled Plaintiff's first choice for an excursion because of "high winds" and Carnival's inability to make the excursion safe during high wind conditions; (2) an adult Carnival passenger who had been served alcohol fell onto E.E. from the top of the Aquapark premises during a high wind; (3) Carnival's expensive COVID-19 testing policy and its cancellation of Plaintiff's first choice excursion pressured Plaintiff to take the Fury excursion at issue; (4) the Carnival crew member who accompanied the excursion knew that Fury was not separating adults and children in the Aquapark; (5) the Aquapark inflatable(s) have a warning label which reads in part "NEVER use while under the influence of alcohol or drugs" and (6) the Carnival employee who traveled with the excursion knew which passengers were intoxicated.

It is well established that a plaintiff cannot successfully defend the adequacy of his Complaint allegations by referring to allegations not in the Complaint and

supplementing (through rhetoric in a memorandum) his existing complaint in a response to a motion to dismiss. *Brown v. J.P. Turner & Co.*, No. 1:09-cv-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (noting that it is "plainly inappropriate" to raise allegations for the first time in response to a motion to dismiss (citations omitted)); *Bruhl v. PriceWaterhouseCoopers Int'l*, No. 03-23044, 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not supplant allegations made in the complaint with new allegations raised in a response to a motion to dismiss).

Ultimately, Plaintiff is improperly attempting to amend the Complaint by asserting new facts and theories in his Response. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (affirming order dismissing breach of fiduciary duty claim and holding that trial court properly refused to consider documents and arguments not in, or attached to, the amended complaint when evaluating a motion to dismiss); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007*). See also Loncke v. Bank of Am.*, No. 114CV01771MHCAJB, 2015 WL 11251741, at *8 (N.D. Ga. Jan. 16, 2015) (court limited to reviewing complaint and would not consider allegation not in the complaint itself); *Brown v. J.P. Turner & Co.*, No. 1:09-cv-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (noting that it is "plainly inappropriate" to raise allegations for the first time in response to a motion to dismiss (citations omitted)).

So Plaintiff's strategy of attempting to amend the Complaint by asserting new, purported facts and theories in the response is improper. *See Fin. Sec. Assur., Inc. v.*

*Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *Walker v. City of Orlando,* No. 07-651, 2007 WL 1839431, at *5 (M.D. Fla. June 26, 2007) (denying as moot motion to strike Plaintiff's responses to motions to dismiss as an improper attempt to introduce new allegations not in the complaint because the court expressly noted that it limited its consideration to the complaint and the instruments attached as exhibits).

Given these pleading deficiencies with the negligence count, the Court should **grant** the motion to dismiss **with leave** for Plaintiff to file an amended complaint.

<u>Improper Allegations of Heightened Duties of Care Against Carnival</u>

The duty of care owed by an owner of a ship in navigable waters while its passengers are on board the vessel is a duty of exercising reasonable care under the circumstances. *Kermarec,* 358 U.S. at 632; *Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir. 1990). Additionally, under general maritime law, "a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 11th Cir. 2012); *Carlisle v. Ulysses Line Ltd., S.A.,* 475 So. 2d 248, 251 (Fla. 3d DCA 1985); *Carmouche v. Carnival Corp.,* 13-62584-CV, 2014 WL 12580521, at *5 (S.D. Fla. May 15, 2014); *Thompson v. Carnival Corp.,* 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016).

Where cruise ship passengers are invitees or expected visitors at offshore locations, such as at excursions operated by others, *some* Courts in our District have held

that "a ship operator's duty of care is **limited** to the duty to warn." *Thompson*, 174 F. Supp. 3d at 1340 (emphasis added) (citing *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1394–95 (S.D. Fla. 2014) (granting, in part, cruise ship operator's motion to dismiss negligence theories beyond the scope of its duties to passengers).

As noted in *Thompson*, 174 F. Supp. 3d at 1342, the issue of whether a plaintiff is trying to impose heightened duties of care on a cruise ship operator that are inconsistent with general maritime law has "been bandied about the Southern District of Florida over the past several years." Some Courts have opted *not* to dismiss claims beyond the duty to warn in "line-item fashion," while others "have struck attempts to impose heightened duties beyond the duty to warn of known dangers in known settings." *Id.*

The *Thompson* Court found the latter approach to be "the more prudent approach" because, otherwise, "the imposition of heightened duties would effectively render cruise line operators like Carnival the all-purpose insurers of their passengers' safety." *Id.*

On the other hand, "[a]lthough generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the reasonable care standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator." *Dudley v. NCL (Bahamas) Ltd.*, No. 23-cv-21041, 2023 WL 5275191, at *3 (S.D. Fla. Aug. 16, 2023) (citing *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1310 (S.D. Fla. 2019)). "The duty to warn of known dangers beyond the ship is, in fact, a subset of the general duty of reasonable care that a shipowner owes

20

to its passengers." *Id.* (citing *Blow v. Carnival Corp.*, No. 22-22587-CIV, 2023 WL 3686840, at *8 (S.D. Fla. May 26, 2023)).

Plaintiff's Complaint broadly alleges that Carnival had a duty to operate safe excursions, and it also raises myriad other alleged duties purportedly flowing from its involvement in helping passengers book excursions. In fact, Plaintiff alleges 22 separate ways in which Carnival was supposedly negligent. Some of these theories tend to overlap, but others require a determination of whether the *Thompson*-type rule is the governing law or whether a more-flexible approach used by other courts is the applicable standard. *See generally Bailey*, 369 F. Supp. 3d at 1310.

*Bailey*, which cites other cases, expressly notes that the Eleventh Circuit has not dispositively resolved whether the duty to warn is the only obligation which a cruise ship might have under the reasonable care standard for off-vessel excursions. *Id.* at 1309–10.

In *Bailey*, a Carnival cruise ship passenger took an excursion, allegedly recommended by Carnival, for a ziplining shore activity. The excursion took place during a port stop in Mexico. As the passenger approached the end of her zipline ride, the line did not stop. Instead, it smashed into a barrier and the passenger suffered serious injuries. Carnival filed a motion to dismiss and argued that the only duty a shipowner owes a passenger once she leaves the ship is the "duty to warn of known dangers in places where passengers are invited or reasonably expected to visit" -- *i.e.*, the *Thompson* rule. Therefore, Carnival argued there (and here), the Court should dismiss any negligence

claim not premised on a duty to warn. But the *Bailey* Court disagreed, citing, among other authorities, *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1287 n.4 (S.D. Fla. 2015).

More specifically, the *Bailey* Court explained that "[a]lthough 'generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the 'reasonable care' standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator.'" *Id*. at 1310. The *Bailey* Court then provided its analysis of the not-yet-settled issue:

> And, "[w]hile this issue has not been dispositively addressed by the Eleventh Circuit," that court has nonetheless "stated that the duty to exercise reasonable care under the circumstances *includes* a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Ferretti v. NCL (Bahamas) Ltd.*, 17-CV-20202, 2018 WL 1449201, at *2 (S.D. Fla. Mar. 22, 2018) (Gayles, J.) (emphasis in original) (quoting *Wolf v. Celebrity Cruises, Inc.*, 683 [F. App'x] 786, 794 (11th Cir. 2017)). Notably, the Eleventh Circuit "did not state . . . that the duty to warn was the **only** duty owed to a passenger while on shore." *Ferretti,* 2018 WL 1449201, at *2 (emphasis added). The Court does not otherwise find persuasive the sources Carnival relies on for the contrary position.

*Id*. at 1310 (italics emphasis in original; bold emphasis added).

Other district courts have cited *Bailey* with approval. *See, e.g., Dudley,* 2023 WL 5275191, at *3; *Hazelitt v. Royal Caribbean Cruises, Ltd.*, No. 23-cv-21014, 2023 WL 4763217, at *5 (S.D. Fla. July 26, 2023). Likewise, other district courts in our Circuit have adopted the same rule (that a cruise ship might have *additional* duties beyond a duty to warn in an off-vessel excursion scenario if, for example, there is an agency relationship). *Pucci,* 146 F. Supp. 3d 1281, 1287 n.4; *Ferretti,* 2018 WL 1449201, at *2 (noting that Courts in our

District "have reached different conclusions with respect to whether a cruise operator may owe a passenger on a shore excursion additional duties beyond the duty to warn" and noting that "[t]he *Wolf* Court did not state . . . that the duty to warn was the 'only' duty owed to a passenger while on shore"). *See also Nielsen v MSC Crociere, S.A.*, No. 10-62548-civ, 2011 WL 12882693, at *4–6 (S.D. Fla. June 24, 2011) (declining to dismiss a negligence claim against a cruise company arising from a shore excursion where plaintiff claimed the cruise company owed numerous duties due to its relationship with the excursion operator; and noting "which alleged duties may ultimately apply to Defendants will depend on which theories of liability (i.e., partnership, agency – actual or apparent, common carrier liability) that Plaintiff is able to prove").

So, given this split of authority, the Undersigned is not convinced that a plaintiff like Escutia could **never** state a negligence claim other than for a failure of a duty to warn of known dangers beyond the point of debarkation, *if* the allegations are not wholly conclusory and include relevant and specific factual allegations. Thus, if Plaintiff had included those types of more-precise factual allegations in his Complaint, which he did not, then he might have pled a negligence claim "sufficient to nudge [him] past dismissal regarding Carnival's notice." *Bailey*, 369 F. Supp. at 1310.

Plaintiff's Complaint acknowledges [ECF No. 1, ¶ 39] that "[a] cruise line has a duty to warn passengers only of those dangers that it "knows or reasonably should have known," and which are not "apparent and obvious to the passenger," and he cites

*Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) and *Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV at *7 (S.D. Fla. Nov. 25, 2014) in support of this principle. However, after *recognizing* the rule, he then asserts myriad theories of negligence which may well go *beyond* the law he just cited.

For example, he alleges that Carnival was negligent by (1) failing to provide a safe excursion; (2) failing to properly supervise and oversee the excursion it marketed and sold; (3) failing to adequately inspect and monitor excursion providers to ensure that the excursion at issue and the equipment used in it were reasonably safe for cruise passengers; (4) failing to adequately inspect and/or maintain the excursion equipment; (5) failing to require the Excursion Entities to adequately warn of the danger posed by the Aquapark inflatables; (6) failing to promulgate, enforce and/or comply with policies and procedures to ensure that excursion participants are warned about the danger posed by the inflatables; (7) permitting a shore excursion to occur when the weather, wind, waves, and other conditions made the activities dangerous without warning passengers; and (8) allowing the excursion to serve unlimited alcohol so that passengers became intoxicated and created risks for themselves and nearby passengers.

However, to the extent that these theories do not involve a violation of a duty to warn of known dangers, they may be, in the absence of an agency relationship or a duty recognized by district courts in our Circuit, beyond the duties recognized in this Circuit as valid negligence approaches against a cruise ship for injuries to a passenger on an off-

24

ship excursion.

Nonetheless, the Undersigned **recommends** that Judge Williams follow, once an amended complaint is filed, a modification of the approach used in *Bailey*: if Plaintiff again asserts alleged breaches of duty beyond the duty to warn for an off-vessel excursion in an amended complaint, then Carnival will need to "flesh out" its argument (that the alleged breaches are premised on duties not recognized under general maritime law) and the parties will "have to address each individual breach either through a motion for summary judgment or at trial." *Bailey*, 369 F. Supp. 3d at 1310, n.2. (pointing out that Carnival "may indeed be correct" that "many, or at least some," of the claims are not recognized under general maritime law).

Therefore, given the split of authority among the district courts and the lack of an on-point decision by our Eleventh Circuit, the Undersigned **recommends** that the Court **dismiss without prejudice** all negligence allegations against Carnival which are not tethered to an alleged failure to warn of known dangers associated with an off-ship excursion operated by another, separate entity. *See generally Keiser v. Carnival Corp.*, No. 1:20-cv-20013, 2020 WL 13401934 (S.D. Fla. June 1, 2020) (granting motion to dismiss amended wrongful death lawsuit against cruise ship operator for negligence claim alleging a failure to hire competent medical providers to provide medical care on shore in Belize after passenger participated in a snorkeling excursion booked through cruise ship and died in a hospital in Belize).

Under this recommendation, if it were to be adopted, Plaintiff could file an amended complaint. [Plaintiff will be filing an amended complaint anyway, to eliminate the "shotgun pleading" problems.]. But, to the extent he relies on negligence claims for off-vessel excursion injuries premised on duties beyond a duty-to-warn theory of liability in an amended complaint, he will need to confirm that the law recognizes all of those duties for off-vessel excursions (and add specific, non-conclusory factual allegations to support those theories).

Thus, rather than asserting generalities in their arguments, *both* Plaintiff and Carnival will need to specifically research each purported duty which Plaintiff alleges (in the to-be-filed Amended Complaint) Carnival breached. Plaintiff will need the research to verify that he is alleging a breach of a duty actually recognized in our Circuit (so that he knows which duties to allege and which ones to omit) and Carnival will need the research to determine whether to file another motion to dismiss, and, if so, which precise alleged duties it will challenge as being beyond those accepted in our Circuit.

<u>Apparent Agency Allegations</u>

In Count III, Plaintiff asserts negligence against Carnival based on apparent agency. He actually alleges "apparent agency or agency by estoppel." [ECF No. 1, at ¶¶ 57-59]. However, as *Bailey* points out, 369 F. Supp. 3d at 1311, n.4, "the Eleventh Circuit does not meaningfully distinguish between the two theories." *See Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 (11th Cir. 2003) (finding "no significant

difference between" the two theories (quotation and citation omitted)). Similar to the approach used in *Bailey,* the Undersigned's analysis here, therefore, will address and refer to only "apparent agency."

Plaintiff asserts several circumstances which, he says, caused him to believe that Fury was Carnival's agent. Carnival disagrees.

Although the Complaint contains several allegations supporting his theory, some of Plaintiff's purported grounds for asserting an agency theory are found for the first time in his response memorandum, not in the Complaint.

For example, his response [ECF No. 53, pp. 12–13] contends for the first time that the post-injury actions of the Fury and Carnival employees "caused the Plaintiff's detrimental, justifiable reliance upon the appearance of agency" because "[i]t was clear to him that the Fury staff members were going to do exactly what the Carnival employees suggested" because "the Fury staff were agents of Carnival" and "Carnival was in charge." Specifically, the response alleges that the employees discussed whether the injured child should be returned to the ship for medical care and "the Fury staff member clearly, repeatedly, and openly deferred to the Carnival employee -- even though the accident occurred at the Fury site." *Id.* at ¶ 37.

But, for the reasons outlined above with case law citations, a party cannot successfully rely upon arguments not in the Complaint or its exhibits to sustain a Complaint in a dismissal motion response. Therefore, the Undersigned will not consider

the argument asserted by Plaintiff if the allegation was not originally in the Complaint itself.

"[A]pparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014). Plaintiff has sufficiently alleged all three elements.

Plaintiff has set forth allegations of specific undertakings by Carnival that, if proved, could establish the requisite manifestations by the principal, causing a third party like Plaintiff to reasonably believe that Fury was Carnival's agent. For example (and there are other allegations in the Complaint beyond the ones mentioned here for illustration purposes): (1) Carnival allowed its name to be used with the advertising of the excursion; (2) Carnival made all the arrangements for the excursion before Plaintiff even boarded the ship or obtained his excursion ticket; (3) Carnival marketed the excursion with its company logo; (4) Carnival maintained an excursion desk on its ship, manned by uniformed Carnival employees, where it offered and sold the excursion and answered questions about it; and (5) Carnival recommended to its passengers to not engage in excursions not sold through Carnival.

Moreover, even if the Complaint merely pleaded that Carnival made

manifestations which caused Plaintiff to believe that the Excursion Entities had authority to act for the benefit of Carnival and that demonstrated that the Excursion Entity was in the control of Carnival, [ECF No. 1, ¶ 60], a claim for apparent agency would not necessarily be foreclosed, if supported by underlying facts. That's because "[a]n apparent agency relationship may be created by silence where the principal knowingly permits the agent to act as if the agent is authorized, or by acting in a manner which creates a reasonable appearance of an agent's authority." Therefore, the Undersigned concludes that Plaintiff has adequately **pled** a claim for apparent agency or agency by estoppel. *Bailey*, 369 F. Supp. at 1309–10. *See also Gayou v. Celebrity Cruises, Inc.*, No. 11-23359, 2012 WL 2049431, at *9 (S.D. Fla. June 5, 2012).

However, the Undersigned must **recommend** that Plaintiff's apparent agency claim be ***denied*** because Carnival's dismissal motion attaches the Cruise Ticket Contract, the Shore Excursion Ticket Contract and the Standard Shore Excursion Contract (between Carnival and Fury) -- and those contracts prevent Plaintiff from establishing one of the critical elements of a claim for apparent agency/agency by estoppel.

Paragraph 11 of the Shore Excursion Contract provides that "[n]othing related in this agreement shall be construed as constituting OPERATOR and CARNIVAL as partners, or as treating the relationships of employer and employee, franchisor and franchisee, master and servant or **principal and agent** or joint venturers between the parties hereto." (emphasis added).

The Shore Excursion Ticket Contract expressly says, under "IMPORTANT NOTICE", in bold font, that:

> Guest agrees and acknowledges that any agreements made by Carnival, for or on behalf of the Guest for any activities off the ship ("Excursions"), Carnival makes those arrangements only for the Guest's convenience. Guest UNDERSTANDS, AGREES and ACKNOWLEDGES that all Excursions are operated by *independent contractors*, that Carnival neither supervises nor controls their actions, and that **CARNIVAL SHALL HAVE NO LIABILITY WHATSOEVER FOR ANY HARM, DAMAGE OR LOSS CAUSED BY, RESULTING FROM, OR ATTRIBUTABLE TO SUCH INDEPENDENT CONTRACTORS.**

[ECF No. 33-2, p. 2 (italics emphasis added; capitalization and bold emphasis in original)].

Paragraph 12(a) of the Cruise Ticket Contract provides, in relevant part, that "[g]uest acknowledges that all shore excursions/tours (whether conducted in the water, on land or by air), airline flights and ground transportation, as well as the ship's physician, and on board concessions . . . are either operated by or are independent contractors." [ECF No. 33-1, p. 13]. That same paragraph also provides that Carnival, in arranging for the services, "does so only as a convenience for the Guest" and "Guest agrees that Carnival assumes no responsibility, does not guarantee performance and in no event shall be liable for any negligent or intentional acts or omissions, loss, damage, injury or delay . . . . In connection with said services." It then says that "Guests use the services of all independent contractors at the Guest's sole risk."

Moreover, paragraph 12(b) of the Cruise Ticket Contract similarly provides that "[g]uest further acknowledges that although independent contractors or their employees

may use signage or clothing which contains the name 'Carnival' or other related trade names or logos, the independent contractor status remains unchanged" and that "[i]ndependent contractors, their employees and assistants are not agents, servants or employees of Carnival and have no authority to act on behalf of Carnival."

Given these contractual provisions, Plaintiff's purported belief that Fury was an agent of Carnival *may* (ultimately, at trial or at summary judgment) not be reasonable. *Wolf*, 683 F. App'x at 798 (affirming order granting summary judgment for defendant cruise ship operator and holding that no apparent agency relationship existed between ship owner and excursion owner and that Plaintiff's belief to the contrary was unreasonable). *See also Ceithaml v. Celebrity Cruises, Inc.*, 739 F. App'x 546, 551 (11th Cir. 2018) (affirming summary judgment for cruise ship operator because "all of these disclaimers made clear that shore operators like [the excursion company] were independent contractors and the [cruise operator] had no control over the operation of the shore excursions").[10]

---

[10]     *Wolf* and *Ceithaml* are unpublished opinions of the Eleventh Circuit. However, these cases were decided at the summary judgment stage of the proceedings and the Undersigned is reluctant to adopt a rule from that different procedural posture in a motion-to-dismiss scenario. *See, e.g., Doe v. Royal Caribbean Cruises, Ltd.*, No. 1:20-CV-22229, 2021 WL 8775731, at *3 (S.D. Fla. Mar. 22, 2021) (distinguishing cases which were either abrogated or decided at the summary judgment stage and determining that cruise ship's argument about the apparent agency theory failed at the pleadings stage, thereby causing the Court to deny that portion of the dismissal motion). *See Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1208 (S.D. Fla. 2020) (noting that *Wolf* was an appeal of a summary judgment proceeding and then concluding that the cruise ship operator's arguments "that [the] [p]laintiffs could not, as a matter of law, have reasonably

Plaintiff's Complaint does not assert a claim for *actual* agency; it seeks recovery under only the doctrines of apparent agency or agency by estoppel. Therefore, the Undersigned need not address an argument that the ticket contract precludes a claim based on actual agency. *See, e.g., Gayou*, 2012 WL 2049431, at *8 (holding that the apparent agency count has been adequately pled but also holding that the actual agency fails to state a claim "because the contract between [the cruise ship operator] and the excursion company shows, as a matter of law, that no actual agency relationship was formed or intended by the parties").

The Joint Venture Claim

Carnival argues that Plaintiff's Joint Venture claim (Count IV) should be dismissed because (1) no factual basis for the claim was asserted (as Plaintiff supposedly alleged only the mere recitals of the elements of a joint venture, and (2) the Tour Operator Agreement ("TOA") it entered into with Fury expressly denies such a relationship. Carnival says we can consider the TOA because, as in *Doria,* Plaintiff relies on the fact that "Carnival and the Excursion Entities entered into an agreement" regarding the subject excursion [ECF No. 1, ¶¶ 13, 88]; *Doria v. Royal Caribbean Cruises, Ltd.,* No. 19-cv-20179-KMW, 2019 WL 13151601, at *5 n.4 (S.D. Fla. June 20, 2019) (citing *Zapata v. Royal Caribbean Cruises, Ltd.,* 2013 WL 1296298, *4 (S.D. Fla. Mar. 27, 2013); *Day v. Taylor,* 400

---

believed there to be an agency relationship between [the cruise ship operator] and [the excursion operator] are unavailing" -- and declining to consider this factual question at the motion to dismiss stage).

F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009)).

Carnival's dismissal motion contains a comprehensive and detailed argument about why the joint venture count fails to state a claim. Despite this substantial challenge, Plaintiff's response fails to address it. Given this procedural development, Plaintiff has abandoned that claim and indicated through his silence that the defense is unopposed, so the Undersigned **respectfully recommends** that the Court **dismiss it with prejudice**. *Jones v. Bank of Am.*, 564 F. App'x 432, 434 (11th Cir. 2014). *See also Fontainebleau Fla. Hotel, LLC v. So. Fla. Hotel and Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1246 (S.D. Fla. 2020); *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017).

### The Unreasonably Dangerous Slide Theory

In Count VI, Plaintiff alleges that the Summit Express slide is unreasonably dangerous when used as intended and in a reasonably foreseeable manner. Carnival filed a substantial substantive challenge to that theory in its dismissal motion -- yet Plaintiff completely failed to address it in his response. Therefore, he has abandoned that theory and the Undersigned **respectfully recommends** that the Court **dismiss it with prejudice**, based on the same case law authority relied upon above for Count IV.

### The Third-Party Beneficiary Claim

In Count V, Plaintiff alleges that he is an intended beneficiary of the contract

between Carnival and the Excursion Entities. He says the contract manifested their intent to primarily and directly benefit him by requiring the Excursion Entities to exercise reasonable care when operating the excursion and by creating a right to enforce a refund in the event of his dissatisfaction for any reason and by requiring the Excursion Entities to "maintain insurance and/or exercise reasonable care in the operation of the subject excursion." [ECF No. 1, ¶ 85].

Carnival, however, argues that Plaintiff failed to allege any provision of the contract that Carnival owed to Plaintiff and breached, and it further notes that the TOA does not express an intent to benefit Plaintiff. Furthermore, Carnival emphasizes that the TOA actually expresses the *opposite* intent: that passengers are *not* to be considered third-party beneficiaries. In fact, the TOA includes the following language:

> **Each party represents and warrants to the other party that . . . (c) its execution and performance under this Agreement will not result in a breach of any obligation to any third party or infringe or otherwise violate any third party's rights.**

[ECF No. 33-3, ¶ 12]. Given this contractual language, Carnival contends that the TOA clearly contradicts Plaintiff's allegations that the contract clearly manifested an intent to primarily and directly benefit Plaintiff as a third-party beneficiary.

The Undersigned agrees with Carnival.

For a third-party beneficiary claim to be stated, Plaintiff must allege: "(1) the existence of a contract to which Plaintiff is not a party; (2) an intent, either expressed by the parties or in the provisions of the contract, that the contract primarily and directly

benefit Plaintiff; (3) breach of that contract; and (4) damages resulting from the breach."

*Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1364 (S.D. Fla. 2016) (citing *Lapidus v. NCL America LLC*, No. 12-21183-CIV, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012)).

"For a contract to intend to benefit a third party, such intent 'must be specific and must be clearly expressed in the contract.'" *Id.* at 1365 (quoting *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1398 (S.D. Fla. 2014)). It is insufficient for "a third party to have an 'incidental or consequential benefit'" resulting from the parties' contract. *Id.* (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005)). The Agreement here does not obviously manifest any such intent, and Plaintiff's reading of the TOA does not persuade the Court otherwise.

Plaintiff's third-party beneficiary claim fails because it is clear in the TOA itself that Carnival had no intent for passengers to be third-party beneficiaries. *Steffan v. Carnival Corp.*, No. 16-25295-CIV, 2017 WL 7796726, at *6 (S.D. Fla. May 22, 2017); *Doria*, 2019 WL 13151601 at *7 (noting that the TOA expressly disclaims any intent for the contract to benefit the Plaintiff passenger, dismissing with prejudice the third-party beneficiary claim and citing *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1296298, at *5 (S.D. Fla. Mar. 27, 2013)); *Gayou*, 2012 WL 2049431 at *11 (S.D. Fla. June 5, 2012) (dismissing count and noting that "there is no reading of the contract that would allow the Court to find either an express or implied intent by the parties to primarily or directly benefit [the plaintiff passenger]").

Similar to the contractual language at issue in the cases cited above, the TOA **explicitly** expresses the intent of the excursion operator and Carnival that passengers are *not* to be considered third-party beneficiaries. [ECF No. 33-3, ¶ 12].

Indeed, Courts in this District have held that the same or nearly identical language in an operating agreement forecloses a third party, such as Plaintiff, from benefitting from the agreement. *See Moreno v. Carnival Corp.*, No. 1:19-CV-22900-JLK, 2020 WL 128481, at *3 (S.D. Fla. Jan. 10, 2020) (with-prejudice dismissal); *Finkelstein v. Carnival Corp.*, No. 14-cv-24005, 2015 WL 12765434, *4 (S.D. Fla. Jan. 20, 2015) (dismissing third-party beneficiary theory because the allegations failed to raise a right to relief above the speculative level"); *Steffan*, 2017 WL 7796726, at *6.[11]

The Undersigned therefore **respectfully recommends** that the Court **dismiss with prejudice** the third-party beneficiary count.

<u>The Negligent Infliction of Emotional Distress Claim</u>

In Count VII, Plaintiff advances a claim for negligent infliction of emotional distress ("NIED") against all Defendants. But, as noted above, because Plaintiff does not indicate whether certain claims concern him or E.E., a minor, it is difficult to discern whether this theory concerns Plaintiff himself (as an individual) or is on behalf of E.E.

---

[11]   In his response, Plaintiff has not cited any case law authority holding that the type of language in the TOA is sufficient to generate a valid third-party beneficiary theory. Instead, the case law he cites discusses only the elements of a third-party beneficiary claim, which is not in dispute here.

The allegations are vague and do not help in making this determination. The critical allegations are that (1) "[a]s a direct and proximate result of Defendants [sic] conduct, Plaintiff has suffered and continues to suffer emotional distress," and (2) "Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress." [ECF No. 1, ¶¶ 115–16].

If the claim is brought by Plaintiff as an individual, then the NIED claim warrants dismissal because Plaintiff fails to plead any facts illustrating that he was in the zone of danger as required and intended. While there are a variety of tests used to assess NIED claims, "admiralty law allows recovery only for those [claims] passing the zone of danger test." *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1369 (S.D. Fla. 2014) (citing *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1353–54 (S.D. Fla. 2008)). "The 'zone of danger' test 'limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, **or** who are placed in immediate risk of physical harm by that conduct.'" *Id.* at 1369 (emphasis supplied) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 547–48, 114 S. Ct. 2396, 2406, 129 L. Ed. 2d 427 (1994)).

The zone of danger rule permits a plaintiff to recover for emotional injuries that result from *witnessing* harm to *another* if the plaintiff is *also threatened with physical harm* as a result of a defendant's negligence. *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5th Cir. 1992). Here, Plaintiff does not allege any facts that Plaintiff himself (assuming the claim is for him, as opposed to being on behalf of E.E.) was in the zone of danger or even that he

witnessed the subject incident take place. Therefore, Plaintiff's claim fails the zone of danger threshold and should be dismissed.

Many courts following the zone of danger test also require that a plaintiff demonstrate a physical manifestation of the emotional injury, *i.e.*, the emotional injury must cause a physical effect. *See Terry v. Carnival Corp*, 3 F. Supp. 3d at 1369–70 (quoting *Gottshall*, 512 U.S. at 549 n.11; Restatement (Second) of Torts, § 436A (1965); citing *Williams v. Carnival Cruise Lines, Inc*., 907 F. Supp. 403, 406 (S.D. Fla. 1995)).

Assuming that the NIED claim here is on behalf of Plaintiff as an individual, he fails to include any allegations that he has suffered a physical manifestation as a result of the emotional distress. *See Terry*, 3 F. Supp. 3d at 1369; *Tassinari v. Key West Water Tours, L.C*., 480 F. Supp. 2d 1318, 1324–25 (S.D. Fla. 2007).

Plaintiff alleges he suffered mental or emotional harm due to Carnival's negligence. [ECF No. 1, ¶ 116]. This allegation fails to establish the requisite showing of physical injury. Thus, Plaintiff has not sufficiently pled NIED, and this is yet another reason why Count VIII of his Complaint should be dismissed.

If the NIED claim is on behalf of E.E., a minor, and if E.E. is *actually* the one who experienced another passenger falling on him from the slide, then the NIED claim is duplicative of the direct negligence claim. Claims that stem from identical allegations, that are decided under identical legal standards and for which identical relief is available, are duplicative. *Manning v. Carnival Corp*., No. 12-22258, 2012 WL 3962997 at *2 (S.D. Fla.

Sep. 11, 2012) (citing *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)).

Claims that are duplicative should be dismissed to promote judicial economy. *Id*. Here,

Plaintiff's NIED claim stems from the same allegations as the direct negligence failure to

warn claim. In fact, in the NIED Count, Plaintiff does not allege any *additional* conduct.

Instead, Plaintiff alleges that "Defendants acted negligently as detailed above."

Therefore, Plaintiff's NIED allegations are identical.

In addition, if the NIED claim is on behalf of E.E., then Plaintiff misconstrues the

zone of danger test. The zone of danger rule permits a plaintiff to recover for emotional

injuries that result from witnessing harm to another if the plaintiff is also threatened with

physical harm as a result of a defendant's negligence. *Plaisance*, 966 F.2d at 169. The NIED

claim is not an appropriate cause of action where the alleged physical injury was suffered

directly by the individual himself. *Id*.; *see also DW v. Carnival Corp.*, No. 17-20115-CIV,

2018 WL 7822329, at *14 (S.D. Fla. June 19, 2018) ("NIED claims are appropriate only

where the physical injury is suffered by someone other than the [p]laintiff. . . . Because

[the] [p]laintiff's alleged emotional harm arises from direct physical injuries to him, his

NIED claim is inappropriate and must be dismissed." (citing *Chaparro v. Carnival Corp.*,

693 F. 3d 1333, 1337–38 (11th Cir. 2012)).

Plaintiff's response provides some additional detail about who the NIED claim is

being brought by, but, to emphasize the rule noted earlier, a plaintiff cannot sustain a

defective complaint with argument in a memorandum. Moreover, even if Plaintiff could

pursue that strategy successfully (which he cannot), the rhetoric is still confusing. The response argues that "[t]he injury that E.E. suffered because of Carnival's negligence has resulted in continuing, ongoing emotional damage to E.E. **and** Plaintiff." [ECF No. 53, ¶ 54 (emphasis provided)]. So it seems as though the NIED claim is being pursued by Plaintiff individually and on behalf of E.E. -- but there are insufficient allegations about how or why the individual NIED claim is being pursued.

Thus, the Undersigned **respectfully recommends** that the Court **dismiss (albeit without prejudice)** the NIED claim. Any refiled claim should not be duplicative but should meet the elements of an NIED claim for Plaintiff himself (assuming the requisite factual allegations can be asserted under Plaintiff's Rule 11 obligations).

<u>The Punitive Damages Demand</u>

In Count VIII (but only in this Count) for NIED against all Defendants, Plaintiff alleges that "Defendant's (sic) conduct was malicious, oppressive, and fraudulent and is warranting punitive damages." [ECF No. 1, ¶ 117]. Carnival seeks to dismiss this claim because it says that (1) punitive damages are not permitted in a negligence case for personal injuries under general maritime law in both the Supreme Court and the Eleventh Circuit; and (2) even if some trial courts in our Circuit have allowed punitive damages claims in personal injury claims under maritime law, they do so only in exceptional circumstances inapplicable here.

The Undersigned agrees, and I therefore **respectfully recommend** that the Court

**dismiss (albeit without prejudice) or strike** the punitive damages demand.

Carnival relies upon *The Dutra Grp. v. Batterton*, 588 U.S. 358, 139 S. Ct. 2275, 204 L. Ed. 2d 692 (2019) (2019) and *Eslinger v. Celebrity Cruises, Inc.*, 772 F. App'x 872 (11th Cir. 2019) to support its view that punitive damages are simply not permitted.

In *Eslinger*, the Court explained that "[o]ur [C]ourt has held that plaintiffs may not recover punitive damages, including loss of consortium damages, for personal injury claims under federal maritime law. *Id.* at 872–73 (citing *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997) and *Lollie v. Brown Marine Serv., Inc.*, 995 F.2d 1565, 1565 (11th Cir. 1993) ("[N]either the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases.")).[12]

Based on *Eslinger*, Courts in this District have struck punitive damages claims. *See Doe v. NCL (Bahamas) Ltd.*, No.19-cv-21486-CMA, [ECF 45] (S.D. Fla., Aug. 29, 2019) (striking punitive damages claim).

To be sure, there are some Courts in our District which have allowed punitive damages claims in personal injury cases under maritime law after *Eslinger*, but they have done so only in "exceptional circumstances" upon a showing of "intentional misconduct"

---

[12]    The Eleventh Circuit's *Eslinger* decision is completely consistent with the Supreme Court's ruling in *Batterton* that punitive damages are not available in maritime crew cases of unseaworthiness. 139 S. Ct. at 2287.

by a defendant. *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1325–26 (S.D. Fla.);[13] *Tang v. NCL (Bahamas) Ltd.*, 472 F. Supp. 3d 1227, (S.D. Fla. 2020) (relying on *in re Amtrak "Sunset Limited" Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997)).

This follows the same standard as those cases pre-dating *Batterton* and *Eslinger,* which also hold that punitive damages are available only in exceptional circumstances of intentional wrongdoing. *Crusan v. Carnival Corp.*, 13-CV-20592-Williams, 2015 WL 13743473, at *6 (S.D. Fla. Feb. 24, 2015) (analyzing case law developments and concluding that plaintiffs may recover punitive damages "only upon a showing of intentional misconduct"); *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260, 2018 WL 4047119, at *2–5 (S.D. Fla. May 8, 2018); *Butler v. Carnival Corp.*, No. 14-21125, 2014 WL 5430313, at *5 (S.D. Fla. Oct. 24, 2014).

Plaintiff's Complaint does not adequately allege exceptional circumstances or intentional wrongdoing. Yes, the Complaint alleges, in wholly conclusory fashion, that the conduct was "intentional" or "malicious," but these fact-free, conclusory allegations are too vague and speculative to be accepted for purposes of finding the allegations to be well-pled. Moreover, the only place they are alleged is in the count for *negligent* infliction of emotional distress, which is hardly on par with the requisite *exceptional* circumstances of *intentional* wrongdoing. *Cf. Tang.*, 472 F. Supp. 3d at 1230–31 (alleging that defendant

---

[13]      The *Doe* Court pointed out that *Eslinger* is an unpublished opinion (and therefore not binding law in our Circuit).

set sail through a severe storm although it knew of the storm's severity).

Therefore, the Undersigned **respectfully recommends** that the Court **strike** the punitive damages claim. If Plaintiff has a good faith basis to allege the necessary facts to support a punitive damages claim because of exceptional circumstances of intentional wrongdoing, then he may do so in his amended complaint. However, any punitive damages claim would need to be consistent with Rule 11 and meet the exceptional circumstances threshold required by those district courts which still permit punitive damages claims after *Eslinger*.

## Connelly Skis' Motion to Dismiss

Connelly Skis, LLC (d/b/a Aquaglide) asks for a dismissal Order because it says the Court lacks personal jurisdiction over it and because the Complaint fails to state an adequate claim. The substantive challenges to the claim are strikingly similar to the ones raised by Carnival. Therefore, the Court will mention them briefly, at the appropriate time, to note that the analysis above has already resulted in an assessment of whether the claim is sufficient.

The primary distinction between the two dismissal motions is that Connelly's motion focuses on personal jurisdiction (and Carnival's did not). And, concerning this distinction, Connelly submitted a declaration to refute the jurisdictional allegations, an approach which Carnival did not pursue (as it did not challenge personal jurisdiction).

Framed by this jurisdiction-focused motion, the Undersigned will first summarize the Complaint's jurisdictional allegations against Connelly, then I will outline the major points asserted in the declaration and analyze the factors in juxtaposition to the law and determine whether Plaintiff has adequately demonstrated personal jurisdiction over Connelly.

<u>The Jurisdictional Allegations</u>

The injury at issue occurred when a passenger fell from a waterslide in Cozumel, Mexico. [ECF No. 1, ¶¶ 23–28]. The waterslide was allegedly a "Summit Express" type slide, designed and manufactured by Aquaglide. *Id.* at ¶¶ 23–28.

Aquaglide is a Delaware corporation headquartered in Oregon, and Aquaglide was served with process in Delaware. [ECF Nos. 1, ¶ 6; 10]. In conclusory fashion, Plaintiff alleges that Aquaglide "manufactures items such as inflatable slides, kayaks, and water skis, all of which are reasonably expected to be purchased and used in Florida." [ECF No. 1, ¶ 15]. Plaintiff also states that "all Defendants . . . [o]perated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county; were engaged in substantial activity within this state; . . . [and that] the acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state." [ECF No. 1, ¶ 9]. There is no allegation that any contacts or actions by Aquaglide in Florida gave rise to the alleged incident in Mexico.

44

Defendant's Declaration

To support its dismissal motion, Connelly Skis submitted the declaration of Peter Arpag, Connelly's director of Product Development. [ECF No. 36-1]. The core assertions are summarized below:

Aquaglide is incorporated in Delaware, and its principal place of business is Washington; Aquaglide products are designed in Oregon and manufactured in China. Commercial "Aquapark" products such as the Summit Express are sold to third-party distributors, who then resell them to operators. Aquaglide's United States third-party distribution center is in **Missouri**, and Aquaglide also has an independent distributor in **Mexico.**

There is **no** third-party distributor for Aquapark commercial products located **in Florida**. Aquaglide has **no office, employees, or property in Florida**. Aquaglide advertises its commercial products online but does **not specifically advertise to Florida** companies, operators, or residents. *Id.* at ¶¶ 3, 7, 9, 10, 12, 13, 16, 18.

Aquaglide does not know how the particular Summit Express slide involved in this case wound up in Cozumel, Mexico. Once a commercial Aquapark piece is sold to a distributor, the third-party distributor will typically resell the product to an operator such as a waterpark, campground, or resort.

Aquaglide does **not determine or control where its products are sent or used** after operators purchase them from distributors. Aquaglide has no record of having sold the Summit Express to any of the other Defendants in this case. Aquaglide **cannot determine**

to which distributor the Summit Express involved in *this* case was sold. Aquaglide has no knowledge of how or when the Summit Express involved in this case was placed at the location where Plaintiff was allegedly injured and had no ability to control how Plaintiff, or the other Defendants, used the Summit Express. *Id.* at ¶¶ 14, 15, 20–22.

Aside from commercial Aquapark products such as the Summit Express, Aquaglide designs and sells consumer products such as inflatable kayaks and lakefront pieces. Its consumer products are distributed through independent contractor sales representatives with assigned territories. Aquaglide uses one sales representative whose territory includes Florida and other southeastern states. This sales representative does not handle sales of commercial Aquapark products such as the Summit Express. *Id.* at ¶¶ 5, 7, 8.

Aquaglide has twice, in 2019 and 2022, sent representatives to meetings of the International Association of Amusement Parks and Attractions ("IAAPA") in Orlando. The IAAPA is not specifically geared toward Florida businesses. Aquaglide does not attend the IAAPA regularly. *Id.* at ¶ 19.

<u>General Legal Principles About Personal Jurisdiction</u>

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *S.O.S. Res. Servs., Inc. v. Bowers*, No. 14-22789-Civ, 2015 WL 2415332, at *2 (S.D. Fla. May 21, 2015) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011)).

46

In order to withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the nonresident defendant. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

If the defendant is able to refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, then the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

To determine whether personal jurisdiction exists, a federal court sitting in diversity must engage in a two-step analysis. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). "First, the exercise of jurisdiction must be appropriate under the forum state's long-arm statute, which delimits the exercise of personal jurisdiction under

state law." *Id.* "Second, the exercise of jurisdiction must comport with the Due Process

Clause of the Fourteenth Amendment." *Id.*

As explained by the Eleventh Circuit, Florida's long-arm statute subjects a

defendant to Florida's personal jurisdiction in one of two ways:

> First, a defendant is subject to 'specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated in the statute. Second, a defendant is subject to 'general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida.'

*Id.*; *see also* Fla. Stat. §§ 48.193(1)(a) and (2).

If the exercise of jurisdiction comports with the state's long-arm statute, then the

Court must next consider whether the exercise of jurisdiction violates the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. *Waite*, 901 F.3d

at 1312. In determining whether an exercise of specific jurisdiction comports with due

process, the Eleventh Circuit employs a three-part test: (1) the court "consider[s] whether

the plaintiffs have established that their claims 'arise out of or relate to' at least one of the

defendant's contacts with the forum"; (2) "whether the plaintiffs have demonstrated that

the defendant 'purposefully availed' itself of the privilege of conducting activities within

the forum state"; and (3) if the first two prongs are met, then "whether the defendant has

'ma[de] a compelling case that the exercise of jurisdiction would violate traditional

notions of fair play and substantial justice.'" *Id*. at 1313 (quoting *Louis Vuitton Malletier,*

*S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

<u>General Personal Jurisdiction</u>

After his personal jurisdiction allegations were challenged in the dismissal motion (and through the attached declaration), Plaintiff contends that Aquaglide is subject to general personal jurisdiction because it engaged in "substantial and not isolated activities in Florida." [ECF No. 47, ¶ 31].

But Plaintiff asserts facts not alleged in the Complaint, and he fails to provide proof of those new assertions. Plaintiff asserts that Aquaglide's products are present in Florida, are advertised and marketed online and on LinkedIn, and that the separate company that owns Aquaglide is registered to do business in Florida as a foreign company. *Id.* at ¶¶ 16–29, 31. Even if proven, these new assertions do not establish personal jurisdiction over Aquaglide.

Mere advertising in Florida cannot establish general personal jurisdiction. *Fraser v. Smith,* 594 F.3d 842, 846 (11th Cir. 2010) (affirming order dismissing claims brought by estate of boat passenger and his injured relatives against tour company operating boat in the Turks and Caicos Islands for lack of personal jurisdiction). In *Fraser*, an out-of-state defendant solicited business in Florida, advertised in Florida, purchased insurance in Florida, and purchased half of its inventory in Florida. *Id.* at 845. The Eleventh Circuit held that there was nothing "continuous or systematic" about the company's limited advertising in Florida because "[a] defendant does not confer general jurisdiction on the

courts of Florida by occasionally soliciting business there." *Id*. The Court also held that the existence of the company's website, which was visible in Florida and could give information about its products, was insufficient to establish general personal jurisdiction in Florida. *Id.*

According to Plaintiff's Response, general personal jurisdiction over Aquaglide exists because Aquaglide is owned by Kent Water Sports, LLC, a foreign limited liability company registered to do business in Florida. Plaintiff's argument is unconvincing. Registering to do business in Florida as a foreign company and designating an agent to accept service of process in Florida does not amount to consenting to personal jurisdiction in this state such that the company can be sued here for causes of action arising outside the state and unrelated to the company's activities in Florida. *See Waite*, 901 F.3d at 1321.

But even if Aquaglide's alleged parent company were subject to personal jurisdiction here, that parent company is not the defendant, and "personal jurisdiction over a Florida parent corporation will not equate to personal jurisdiction over a subsidiary." *Verizon Trademark Services, LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011) (emphasis added); *see also Am. Express Ins. Servs. Europe Ltd. v. Duvall*, 972 So. 2d 1035, 1040 (Fla. 3d DCA 2008).

There is an exception to this principle if "the subsidiary is merely the alter ego or mere instrumentality of the Florida parent corporation, over which the Court does have personal jurisdiction." *Producers, Inc.*, 810 F. Supp. 2d at 1329. That exception is

inapplicable here. Kent Water Sports, LLC, has not been sued or served and is not subject to the jurisdiction of this Court, and Aquaglide is not alleged to be a mere alter ego of the parent company. Plaintiff's unsupported assertions about Aquaglide's parent company fail to establish that *Aquaglide* is subject to general personal jurisdiction in Florida.

As noted above, Florida's long-arm statute requires an inquiry into whether exercising general personal jurisdiction over a foreign corporation exceeds constitutional bounds. *Fraser*, 594 F.3d at 846; *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). This requires Plaintiff to plead in the Complaint or show by *evidence* that Aquaglide's contacts with Florida are so continuous and systematic that Aquaglide is essentially "at home" in Florida. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415--16, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984); *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014); *Carmouche*, 789 F.3d at 1204. *See also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (2011) (corporations must "essentially" be "at home" in the "forum state").

This "at home" test applies to Aquaglide, a limited liability company, even though it is not a corporation. *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1344 (S.D. Fla. 2017) (agreeing with the view that "there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity").

This Court has stated that only in *exceptional* cases will there be general personal jurisdiction over a non-resident defendant outside of its place of incorporation and principal place of business. *Thompson*, 174 F. Supp. 3d at 1334.

Aquaglide is incorporated in Delaware, and its principal place of business is in Washington; Aquaglide products are designed in Oregon and manufactured in China. There is no third-party distributor for Aquapark commercial products located in Florida. Aquaglide has no office, employees, or property in Florida. [ECF No. 36-1, ¶¶ 3, 7, 9, 10, 12, 13, 16, 18.].

For these reasons, Plaintiff cannot show that Aquaglide is "at home" in Florida, and Aquaglide is not subject to general personal jurisdiction here.

Moreover, Aquaglide's limited contacts in Florida consist of having a single sales representative who was hired as an independent contractor. This representative's assigned territories include Florida and other states. Yes, it is correct that Aquaglide attended a trade show in Orlando in 2019 and 2022, but the Undersigned agrees with Aquaglide that these limited contacts are insufficient to establish general personal jurisdiction over it.

While Plaintiff asserts that Aquaglide's products might be present in Florida, there is no evidence that *Aquaglide* sold those products in Florida or to any Florida companies. The commercial Aquapark products Plaintiff references in the Response are sold to third-party distributors, who then resell them to operators. Once a commercial Aquapark piece

is sold to a distributor, the third-party distributor will resell the product to an operator such as a waterpark, campground, or resort.

As explained in the declaration, Aquaglide does not determine or control where its products are sent or used after operators purchase them from distributors. While Plaintiff asserts in the Complaint that Aquaglide's products entered the stream of commerce, the stream of commerce test is not used to analyze **general** personal jurisdiction. *See R.D.T. Bus. Enters. Inc. v. Garcoa, Inc.*, 06-60837-CIV, 2007 WL 9700852, at *5 (S.D. Fla. Jan. 31, 2007). In fact, the Supreme Court has stated that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Ca., Solano Cnty.*, 480 U.S. 102, 112 107 S. Ct. 1026, 1032, 94 L. Ed. 2d 92 (1987).

Thus, for the reasons explained above, general personal jurisdiction does not exist over Aquaglide in this case.

<u>Specific Personal Jurisdiction</u>

Specific personal jurisdiction exists "for any cause of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Fla. Stat. § 48.193(1)(a)(1). It is not merely the operation of a business in Florida that matters, but that the operation in Florida gave rise to some cause of action in this state. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1353. The Response does not attempt to

argue that the Complaint adequately pled specific personal jurisdiction. The new assertions in the Response relate to advertising and having products in Florida -- and therefore play no role in determining specific personal jurisdiction, which means they should be disregarded.

Aquaglide did not take any actions in Florida that caused or contributed to the incident in Mexico. Plaintiff has not refuted Aquaglide's declaration that supports the lack of personal jurisdiction in this case. As stated in the declaration, Aquaglide does not operate its business in Florida. Aquaglide also does not know how the particular Summit Express involved in this case wound up in Mexico. Presumably, the Cozumel operator must have purchased the specific Summit Express from a third-party distributor. Still, Plaintiff has not alleged that the sale to the Cozumel operator was made by *Aquaglide*, and there is nothing about the alleged incident in Mexico that has any relation to any actions by Aquaglide in Florida.

Plaintiff argues that he filed this case in Florida because of the Florida contacts which Carnival and Lisandra/Fury have with Florida. While there might be personal jurisdiction over **those** defendants, that does not give the Court personal jurisdiction over *Aquaglide.*

Plaintiff also argues that the convenience of suing Aquaglide in Florida outweighs the burden of suing Aquaglide in the proper state. [ECF No. 47, ¶ 38]. Plaintiff's convenience is not relevant to the issue of personal jurisdiction over Aquaglide. It is not

the convenience of Plaintiff that should be considered but that of Aquaglide. *See generally World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980) (one purpose of the due process analysis for minimum contacts is to "protect[ ] the **defendants** against the burdens of litigating in a distant or inconvenient forum" (emphasis added)).

Plaintiff has not established specific personal jurisdiction over Aquaglide, and the Undersigned therefore **recommends** that the Court **grant** its dismissal motion on lack of personal jurisdiction grounds.

<u>Aquaglide's Other Arguments</u>

Similar to Carnival's dismissal motion, Aquaglide contends that the Complaint fails to adequately identify the relationship between Erick Escutia and the minor, E.E. The Undersigned agrees with this challenge and **recommends** that the Court **grant** the motion to dismiss on this ground, as well (albeit **without prejudice** and with leave to amend).

Aquaglide also argues that Plaintiff's Complaint fails to state a claim for product liability through its theory that the Summit Express "is unreasonably dangerous." Plaintiff's response to these arguments is based on new allegations, not found in the Complaint.[14] This strategy is impermissible (as explained earlier in the Order), and the

---

[14]     Paragraphs 17 through 26 of the Response [ECF No. 47] are new allegations, raised for the first time in the memorandum opposing the dismissal motion.

Undersigned will not consider these new allegations for purposes of evaluating a dismissal motion. *Osan v. Verizon Fla. LLC*, 8:15-CV-104, 2015 WL 13749752, at *3 (M.D. Fla. Sept. 1, 2015) (noting that "new allegations made in response to the motion to dismiss cannot 'save' an insufficiently pleaded complaint from dismissal" and granting motion to dismiss, albeit without prejudice). *See also Murray v. Carlton*, No. 5:21-cv-424, 2022 WL 17960685 (M.D. Fla. Dec. 27, 2022) (rejecting new facts because, even if true, they were not stated in the complaint).

<u>The NIED Claim</u>

Aquaglide argues that the NIED claim is insufficient. The Undersigned already agreed with this argument when Carnival asserted it, and there is no reason to repeat the analysis, given that I am agreeing with my prior ruling. Thus, I **recommend** that the Court **dismiss** this claim, as well.

<u>The Punitive Damages Claim</u>

The Undersigned again **recommends** that the Court strike the **punitive** damages claim.

**IV.**   <u>**Conclusion**</u>

The Undersigned **respectfully recommends** that the Court **grant** the two motions to dismiss in the ways specified above (*i.e.*, that some claims be dismissed with prejudice while others be dismissed without prejudice, with leave to amend, assuming that Plaintiff has a good faith basis to assert them again).

## V.     Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, March 13, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record

57